UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| AARON BABCOCK, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Cause No. 4:20-CV-23-HAB |
| GANNETT SATELLITE INFORMATION NETWORK, LLC, | ) ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

This matter comes before the Court on Defendant's Motion to Dismiss and Incorporated Memorandum of Law (ECF No. 14), filed on July 10, 2020. In summary, Defendant argues that Plaintiff has failed to allege facts that would allow this Court to exercise personal jurisdiction over Defendant and, even if jurisdiction existed, Plaintiff has failed to plead a *prima facie* case for copyright infringement. The motion has been fully briefed and is ripe for determination.

**A.     Plaintiff's Allegations**

Consistent with the applicable standard of review, the facts as pled in Plaintiff's Amended Complaint are as follows. Plaintiff is a professional photographer with his "usual place of business" in Lincoln, Nebraska. Defendant is alleged to be a Delaware domestic business corporation with a place of business in Lafayette, Indiana. Defendant operates four websites: www.jconline.com; www.lohud.com; www.redding.com; and www.amp.usatoday.com. It is alleged that www.jconline.com is based in Lafayette and targets residents of the Northern District of Indiana.

The subject of this lawsuit is a 2018 photograph taken by Plaintiff of actor Bill Murray attending a Big Ten football game between Purdue and Nebraska. Plaintiff registered the

photograph with the United States Copyright Office and received a copyright registration number. On September 29, 2018, and again on November 21, 2018, Defendant ran articles containing the photograph on the websites. Defendant did not license the photograph from Plaintiff, nor did it have Plaintiff's consent to publish the photographs in its articles.

Plaintiff initially published the photograph on Twitter. Plaintiff asserts that, when reproducing the photograph in its articles, Defendant did not use Twitter's "embed function." Plaintiff further asserts that Defendant failed to link to Plaintiff's Twitter account. Finally, Plaintiff alleges that Defendant's use of the photograph violated Twitter's terms of service.

On the basis of the foregoing allegations, Plaintiff brings a single count of copyright infringement under 17 U.S.C. §§ 106 and 501. Plaintiff seeks damages, up to $150,000.00 per infringed work, as well as his attorney's fees and costs.

**B.     Legal Analysis**

**1.     *Standard of Review***

**a.**     Rule 12(b)(2)

"[A] complaint need not include facts alleging personal jurisdiction." *Steel Warehouse of Wisconsin, Inc. v. Leach*, 154 F.3d 712, 715 (7th Cir. 1998). However, once the defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction. *See Central States, S.E. & S.W. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 939 (7th Cir. 2000); *Steel Warehouse*, 154 F.3d at 715; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1997).

When a district court rules on a defendant's motion to dismiss based on the submission of written materials, without the benefit of an evidentiary hearing, the plaintiff "need only make out

a *prima facie* case of personal jurisdiction." *See Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002); *see also Weidner Communications, Inc. v. H.R.H. Prince Bandar Al Faisal*, 859 F.2d 1302, 1306 n. 7 (7th Cir. 1988); *Nelson v. Park Indus., Inc.*, 717 F.2d 1120, 1123 (7th Cir. 1983) (stating that a court may receive and weigh affidavits to determine whether it has personal jurisdiction and that, during this preliminary proceeding, "the burden of proof is met by a *prima facie* showing that personal jurisdiction is conferred under the relevant jurisdictional statute"). In evaluating whether the *prima facie* standard has been satisfied, the plaintiff "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Nelson*, 717 F.2d at 1123; *see also RAR*, 107 F.3d at 1275 (stating that the plaintiff "is entitled to have any conflicts in the affidavits resolved in its favor").

**b.**     Rule 12(b)(6)

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Cler v. Ill. Educ. Ass'n*, 423 F.3d 726, 729 (7th Cir. 2005). In ruling on a motion to dismiss brought pursuant to Rule 12(b)(6), the court assumes all well-pleaded allegations in the complaint to be true and draws all inferences in the light most favorable to the plaintiff. *Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). To survive a motion to dismiss, the complaint must overcome "two easy-to-clear hurdles": (1) "the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds on which it rests"; and (2) "its allegations must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the 'speculative level.'" *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (emphasis in original).

**2.     *Plaintiff has Made a Prima Facie Showing of Personal Jurisdiction with Respect to www.jconline.com Only***

In a federal question case such as this one, a federal court has personal jurisdiction over a defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant. *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Associates Houston*, 623 F.3d 440, 443 (7th Cir.2010). Congress did not provide for national service of process under the Copyright Act. *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 550 (7th Cir. 2001). Accordingly, this Court has personal jurisdiction over Defendant only if it is amenable to service under Indiana law. Personal jurisdiction under Indiana law "extends to the limits allowed by the Due Process Clause of the Fourteenth Amendment." *Weston v. Big Sky Conference*, 466 F.Supp.3d 896, 905 (N.D. Ill. 2020).

Federal law recognizes two types of personal jurisdiction: general and specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 n.8–9 (1984). Plaintiff does not argue for general jurisdiction, so the Court will focus on specific jurisdiction. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). "[T]he nature of the purposeful-direction/purposeful-availment inquiry depends in large part on the type of claim at issue." *Felland v. Clifton*, 682 F.3d 665, 674 (7th Cir. 2012).

To be subject to specific jurisdiction, a defendant need only have sufficient "minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "Jurisdiction is proper . . . where the contacts

proximately result from actions by the defendant himself that create a substantial connection with the forum State." *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal quotation marks omitted). Courts look to the defendant's "conduct and connection with the forum State" to determine if he should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

That this case involves the internet does not change this analysis. The Court recognizes the morass that is caselaw attempting to shoehorn nineteenth century jurisdictional principles into twenty-first century modes of communication. Courts have done their best to evaluate the extent to which an internet presence creates personal jurisdiction, developing inquiries like the "sliding scale" of interactivity. *See Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997). The Court, however, finds it unnecessary to resort to these new formulations of the age-old questions. As the Court of Appeals for the District of Columbia has stated,

> We do not believe that the advent of advanced technology, say, as with the Internet, should vitiate long-held and inviolate principles of federal court jurisdiction. The Due Process Clause exists, in part, to give "a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit."

*GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1350 (D.C. Cir. 2000) (quoting *World-Wide Volkswagen*, 444 U.S. at 297. The Court will, therefore, utilize the same three-part inquiry it would in any case, asking whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair. *AirFX, LLC v. Braun*, 2011 WL 5523521 at *2 (S.D. Ind. Nov. 14, 2011).

This analysis is easy for the claims related to www.lohud.com; www.redding.com; and www.amp.usatoday.com. Plaintiff does not assert that any of these websites are directed at the

5

Northern District of Indiana. Rather, Plaintiff claims a sort of pendent personal jurisdiction, stating "the fact that at least one of the websites identified in the Amended Complaint is directed at Indiana residents is sufficient" to sweep the remaining issues within this Court's jurisdiction. (ECF No. 18 at 10).

The Court disagrees. "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. In contrast to general, all-purpose jurisdiction, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations and quotes omitted). The allegedly infringing poses on www.lohud.com; www.redding.com; and www.amp.usatoday.com did not take place in Indiana, are not the basis for jurisdiction in Indiana, and are not so related to the post on www.jconline.com so as to bring them within the jurisdiction of the Court. The Court finds nothing reasonable or fair in forcing Defendant to defend itself against claims that have no relation or connection to this district.

The post on www.jconline.com is a different matter. This is the website for the Lafayette Journal & Courier, a daily newspaper serving Lafayette, Indiana, and surrounding communities. Linked to the allegedly infringing post are stories about Lafayette area high school sports (ECF No. 14-1 at 7) and Purdue University, located in nearby West Lafayette (*id*. at 8). The site contains obituaries for Lafayette-area residents (*id.* at 2) and, as of the date of this Opinion and Order, contained a link where internet visitors could buy gift cards for local businesses. The Court finds that there are "tangible manifestations that defendant was attempting to reach" an Indiana market.

*American Network, Inc. v. Access America/Connect Atlanta, Inc.*, 975 F.Supp. 494, 498 (S.D.N.Y 1997). The allegedly infringing post was part of those manifestations.

This leaves only the question of whether it is reasonable and fair for the Court to assert jurisdiction over Defendant. In determining whether the exercise of jurisdiction is fair, courts use the so-called *Burger King* factors: 1) the extent of a defendant's purposeful interjection; 2) the burden on the defendant in defending litigation in the forum state; 3) the extent of conflict with the sovereignty of the defendant's state; 4) the forum state's interest in adjudicating the dispute; 5) the most efficient judicial resolution of the controversy; 6) the importance of the forum to plaintiff's interest in convenient and effective relief; and 7) the existence of an alternative forum. *Euromarket Designs, Inc. v. Crate & Barrell Ltd.*, 96 F.Supp.2d 824, 839 (N.D. Ill. 2000).

Gannett is an international news operation, publishing newspapers across the United States and the United Kingdom. This includes fifteen (15) newspapers in Indiana. *See* https://www.gannett.com/brands/. Given Defendant's considerable interest in selling newspapers and online content to Indiana residents, the Court finds that it has purposefully injected itself into this district. Litigation in this district does not appear to be particularly burdensome on Defendant; it has retained counsel and submitted numerous filings. The case has been pending in this Court for nearly a year, so maintaining jurisdiction here promotes judicial efficiency. Finally, with the allegedly infringing post targeting Indiana citizens, the courts of the state have an interest in adjudicating this dispute. With the remaining factors being neutral at best, the Court finds that there is nothing unreasonable or unfair in exercising jurisdiction over Defendant in the Northern District of Indiana.

In summary, the Court finds that specific personal jurisdiction exists with respect to the claim for infringement addressing the post on www.jconline.com, but not for any of the remaining

claims. Defendant's Fed. R. Civ. P. 12(b)(2) motion will, therefore, be granted in part and denied in part.

**3.      *The Question of Whether the Post Violates the Copyright Act cannot be Determined on a Motion to Dismiss***

To establish copyright infringement, one must prove two elements: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Telephone Service Co., Inc*., 499 U.S. 340, 361 (1991). Defendant does not meaningfully dispute either element.[1] Rather, Defendant asserts that it has a valid sublicense by virtue of the Twitter Terms of Service.

As Fed. R. Civ. P. 8 indicates, "the existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement." *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996); *see also Bourne v. Walt Disney Co*., 68 F.3d 621, 631 (2d Cir. 1995) (noting that "possession of a license by an accused infringer traditionally has been characterized as a matter of affirmative defense"); 2 Patry on Copyright § 5:118 (noting that existence of a license, that is, "permission to use" the "copyrighted work," is an affirmative defense). The burden is therefore on the alleged infringer to show that the use was authorized—not on the plaintiff to show it was not. *See Chamberlain Grp., Inc. v. Skylink Techs., Inc.*, 381 F.3d 1178, 1193 (Fed. Cir. 2004) ("[U]nder Seventh Circuit copyright law, a plaintiff only needs to show that the defendant has used her property; the burden of proving that the use was authorized falls squarely on the defendant."). This rule makes sense: "proving a negative is a challenge in any context," *Vieth v. Jubelirer*, 541 U.S.

---

[1] Defendant briefly argues that it cannot determine, from the attachments to the Amended Complaint, "which online publications, or which images appearing therein, purportedly infringe upon Plaintiff's copyright, or the precise manner in which said examples allegedly infringe." (ECF No. 14–15). To the contrary, the Court finds that Plaintiff has identified the image specifically (*see* ECF No. 9-1) and has included hyperlinks to the offending posts (ECF No. 9 at 3). Plaintiff has put Defendant on notice, with sufficient clarity, of the alleged wrongful acts.

267, 311 (2004), and if there is evidence of a license, it is most likely to be in the possession of the purported licensee. *See Bourne*, 68 F.3d at 631.

The Court cannot conclude, at this point, that Twitter's TOS give rise to a sublicense here. The applicable language from the TOS is as follows:

> By submitting, posting or displaying Content on or through the Services, you grant us a worldwide, non-exclusive, royalty-free license (with the right to sublicense) to use, copy, reproduce, process, adapt, modify, publish, transmit, display and distribute such Content in any and all media or distribution methods now known or later developed (for clarity, these rights include, for example, curating, transforming, and translating). This license authorizes us to make your Content available to the rest of the world and to let others do the same. ***You agree that this license includes the right for Twitter to provide, promote, and improve the Services and to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, Retweet, promotion or publication of such Content on other media and services, subject to our terms and conditions for such Content use.*** Such additional uses by Twitter, or other companies, organizations or individuals, is made with no compensation paid to you with respect to the Content that you submit, post, transmit or otherwise make available through the Services as the use of the Services by you is hereby agreed as being sufficient compensation for the Content and grant of rights herein.

https://twitter.com/en/tos (emphasis added). The language does provide that, by posting content on Twitter, the poster agrees "to make Content submitted to or through the Services available to other companies, organizations or individuals for the syndication, broadcast, distribution, Retweet, promotion or publication of such Content on other media and services." However, that agreement is made "subject to [Twitter's] terms and conditions for such Content use." This caveat strikes the Court as important, but it is not analyzed or discussed in Defendant's briefing.

There are also factual disputes about Defendant's use. Specifically, the parties dispute whether Defendant reproduced the photos via Twitter's embed function or not. Plaintiff's exhibits seem to indicate that Defendant did not use the embed function (ECF No. 9-2 at 5), while Defendant's exhibits point in the other direction (ECF No. 14-1). It is not clear to the Court whether

9

the use of the embed function is relevant to the infringement analysis (neither side briefs the issue), but to the extent that the manner of the reproduction goes to permitted use under Twitter's TOS that dispute must be resolved in Plaintiff's favor.

Simply put, the Court is not willing to say, at the motion to dismiss stage, that Defendant's use of Plaintiff's copyrighted work was not infringement. The parties are free to re-raise this issue at the summary judgment stage, after discovery has been conducted. At this point, however, the Court concludes that it must permit Plaintiff's case to proceed.

**C.     Conclusion**

For the foregoing reasons, Defendant's Motion to Dismiss and Incorporated Memorandum of Law (ECF No. 14) is GRANTED in part and DENIED in part. The motion is granted with respect to any and all infringement claims addressing Defendant's use of the subject image on its websites www.lohud.com; www.redding.com; and www.amp.usatoday.com. The motion is denied in all other respects.

SO ORDERED on February 12, 2021.

 s/ *Holly A. Brady*
JUDGE HOLLY A. BRADY
`UNITED STATES DISTRICT COURT

10